Case 0:23-cr-60001-AHS Document 1 Entered on FLSD Docket 01/04/2023 Page 1 of 12

FILED by \_\_MM\_\_ D.C.

Jan 3, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-60001-CR-SINGHAL/DAMIAN**

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

CHRISTOPHER J. RASCIONATO,

    Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an

individual's access to durable medical equipment ("DME"), such as orthotic braces (*e.g.*, knee braces, back braces, shoulder braces, ankle braces, and wrist braces) and wheelchairs. Medicare Part C, also known as the "Medicare Advantage" Program, provided Medicare beneficiaries with the option to receive their Medicare benefits through private managed health care plans, including health maintenance organizations and preferred provider organizations.

3.     Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

**Medicare Enrollment and Coverage for Durable Medical Equipment**

4.     DME suppliers, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which includes a certification that the provider will abide by Medicare laws, regulations, and program instructions, including the Federal Anti-Kickback Statute, and will not submit or cause to be submitted false or fraudulent claims for payment.

5.     If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. Medicare reimbursed DME suppliers and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically via interstate wires, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

9. Medicare would only pay for services that were medically reasonable and necessary, eligible for reimbursement, and provided as represented. Medicare would not pay claims for services that were procured through the payment of illegal kickbacks and bribes.

**Telemedicine**

10. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or telephone, to interact with a patient.

11. Telemedicine companies provided telemedicine services, or telehealth services, to individuals by hiring doctors and other health care providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

12. Medicare Part B covered expenses for specific telehealth services if certain requirements were met. These requirements included that: (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was in a practitioner's office or a

specified medical facility—not at a beneficiary's home—during the telehealth service with a remote practitioner.

13. In or around March 2020, in response to the COVID-19 pandemic and in order to enable access to care during the public health emergency, some of these requirements were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area and even if the telehealth services were furnished to beneficiaries in their home.

### The Florida Medicaid Program

14. The Florida Medicaid Program ("Medicaid") was a partnership between the State of Florida and the federal government that provided health care benefits to certain low-income individuals and families in Florida. The benefits available under Medicaid were governed by federal and state statutes and regulations. Medicaid was administered by CMS and the State of Florida's Agency for Health Care Administration ("AHCA"). Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

15. Medicaid was funded with both federal and state money, and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

16. To receive payment from Medicaid, providers submitted or caused the submission of claims to Medicaid, either directly or through a Medicaid Managed Care Organization ("MCO").

17. Medicare beneficiaries who were dual-enrolled Medicaid recipients were referred to as "dual-eligible beneficiaries." To receive payment for dual-eligible beneficiaries, providers submitted or caused the submission of claims to Medicare, which automatically transmitted a

4

"crossover" claim to the Medicaid system for processing of a cost-sharing amount set forth in CMS's Coordination of Benefits Agreement.

18. Medicaid reimbursed DME companies and other health care providers for services rendered to and items provided to recipients or dual-eligible beneficiaries, including DME that was medically necessary and provided as represented. Medicaid would not pay claims for services or items that were procured through the payment of illegal kickbacks and bribes.

**The Defendant, Related Entities, and Relevant Persons**

19. North Shore Medical Supplies LLC ("North Shore") was a DME company formed under the laws of Florida, with its principal place of business in Broward County, Florida.

20. Sunshine DME Supplies, LLC ("Sunshine") was a DME company formed under the laws of Florida, with its principal place of business in Broward County, Florida.

21. Unicorn Media LLC ("Unicorn Media") was a company formed under the laws of Florida, with its principal place of business in Palm Beach County, Florida.

22. Triangle Supply LLC ("Triangle Supply") was a company formed under the laws of Florida, with its principal place of business in Broward County, Florida.

23. Defendant **CHRISTOPHER J. RASCIONATO**, a resident of Palm Beach County, was the owner and manager of North Shore and Sunshine, and also operated Unicorn Media and Triangle Supply.

24. Individual A, a resident of Palm Beach County, was the owner of three DME companies formed under the laws of Florida with their principal places of business in Palm Beach and Broward Counties, Florida. Individual A also operated Triangle Supply with **CHRISTOPHER J. RASCIONATO**.

25. Individual B, a resident of Palm Beach County, was an owner of a purported marketing company formed under the laws of Florida with its principal place of business in Palm Beach County, Florida.

26. Individual C, a resident of Palm Beach County, was an owner of a purported marketing company incorporated under the laws of Florida with its principal place of business in Palm Beach County, Florida.

27. Individual D, a foreign resident, was an owner of a purported marketing company incorporated under the laws of Delaware.

28. Individual E, a resident of Palm Beach County, was an owner of two DME companies formed under the laws of Florida with their principal places of business in Broward and Palm Beach Counties, Florida.

**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

From in or around at least August 2019, and continuing through in or around December 2021, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**CHRISTOPHER J. RASCIONATO,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Individual A, Individual B, Individual C, Individual D, Individual E, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under

the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

29. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries and Medicaid recipients for DME, without regard to whether the beneficiaries and recipients needed the DME or whether the DME was eligible for reimbursement by Medicare or Medicaid; (b) paying kickbacks and bribes to purported telemedicine and marketing companies in exchange for doctors' orders for DME, without regard to whether the beneficiaries or recipients needed the DME and knowing that the doctors' orders did not result from a valid doctor-patient consultation; (c) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid for DME that was medically unnecessary and ineligible for reimbursement; (d) concealing the submission of false and fraudulent claims to Medicare and Medicaid; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

30. **CHRISTOPHER J. RASCIONATO**, Individual A, and other co-conspirators, through their DME companies, including North Shore and Sunshine, offered and paid illegal kickbacks and bribes to purported marketing and telemedicine companies, including companies owned by Individual B, Individual C, and Individual D, in exchange for doctors' orders for DME that was medically unnecessary and ineligible for reimbursement by Medicare or Medicaid.

31. **CHRISTOPHER J. RASCIONATO**, Individual A, and other co-conspirators obtained these orders knowing that the doctors' orders were medically unnecessary because they did not result from a valid doctor-patient consultation, and that the doctors who purportedly ordered the DME did not have a relationship with the beneficiaries and recipients and were not treating the beneficiaries and recipients for any symptoms or illnesses.

32. **CHRISTOPER J. RASCIONATO** and other co-conspirators also operated purported marketing companies, including Triangle Supply and Unicorn, through which they sold doctors' orders for medically unnecessary DME to other DME companies, including DME companies owned by Individual E, in exchange for illegal kickbacks and bribes.

33. **CHRISTOPHER J. RASCIONATO** submitted and caused the submission of claims to Medicare and Medicaid in the approximate amount of $22,078,864, of which Medicare and Medicaid paid approximately $9,471,460.

34. **CHRISTOPHER J. RASCIONATO** personally received approximately $9,260,446 as a result of his participation in the scheme.

35. **CHRISTOPHER J. RASCIONATO**, Individual A, Individual B, Individual C, Individual D, Individual E, and other co-conspirators used the fraud proceeds to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **CHRISTOPHER J. RASCIONATO**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ANDREA SAVDIE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

CHRISTOPHER J. RASCIONATO,

**Defendant.**
_____/

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☑ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **0** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☑ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **Yes**
   If yes, Judge **Singhal** Case No. **22-60258-CR**

9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) **No**
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: _____
ANDREA SAVDIE
DOJ Trial Attorney
Court ID No.     A5502799

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  **CHRISTOPHER J. RASCIONATO**

**Case No:** _____

Count #:  1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud
* Max. Term of Imprisonment:   10 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $250,000 or twice the gross gain or loss from the offense

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Christopher J. Rascionato, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*